Next case is number 23-1047 Jamal Morton v. Director of the Judicial Advisory Bureau of Corrections Thank you. Could you start with Judge Rendell's question? Because isn't the law clear that once there's an inordinate delay, the burden shifts to the government to show why exhaustion was not required? If the district court finds an inordinate delay, but the district court found that Mr. Morton had contributed to that delay, so there was no... Well, he contributed to the delay after the status conference. That was the final point. Speaking only for myself, there seemed to be an inordinate delay in getting to the status conference. It wasn't there. It was delayed, Your Honor, but that does not warrant exhaustion in this case. And I would say... No, I know. I'm not there yet. What I'm saying is suggesting, and you tell me what I'm missing, is that because there was such delay up to the status conference, and Mr. Morton was doing his part before the status conference, he was very active trying to move the case along before the status conference, correct? Correct, but the government does not concede that there was an inordinate delay as compared to any other case in the Virgin Islands. There was delay. As compared to any other case in the Virgin Islands or any other case generally. We have held it 33 months as an inordinate delay. How long do you think the delay was in this case? No, no, no. You're talking about before the status conference or after the status conference? The whole thing. It's adequate to today. All right, before the status conference. All right, so there was a year period where things didn't happen, but the case had, at that point, the point of the status conference, it was moving, and if I can place this in historical context. So on July 19th, 2017, there was a status conference, and of course, as I'm going to issue the writ, meaning I'm going to have scheduling order, order the government to write its return, write its reverse, and so on. But wasn't there six years up until then? Was it six years? No, it was three years up until then. Three years up until then, and then three years afterwards. So it was six years total. Yes, Your Honor. And so 50 days later, September 5th, the charge board was hit with a devastating hurricane, Hurricane Irma. Two weeks after that, we had another hurricane, Hurricane Maria. The entire court system, the entire court system. Aren't these reasons why, if it goes back, you get to argue that the six-year delay is not a basis for excusing exhaustion because of all these other factors? Isn't that where that comes in? If the court rules that way, these are reasons that the government could put up. That you would present? Yes. What case would support the proposition that Petitioner had to do something more here? I mean, the Virgin Islands Court acted like he contributed to the delay, but he didn't really do anything to cause it. Maybe he didn't do X, Y, or Z, or did prod, as Judge Harden would recommend, but what case says he had to do something more than he did? After the staff's confidence, I would say Marksdale v. Krause, 360 Federal, 2nd and 34, 10th Circuit, 1966. And that talks about the lack of diligence of Petitioner's counsel. Well, a case from another circuit that was decided 30 years before Edco was decided, that's pretty… I have not pulled that case. That's in your brief. Yes, Your Honor. All right. Were there facts similar to here, that he had done something and then failed to do something else? Just inaction, or what were the facts of that case? I would have to submit something further on that for you, Your Honor. I'm just re-reading it. But don't you have a case law, a story that says that you don't need to tell the court that it hasn't acted, that you don't indicate under our case law, you really don't have to tell the court that it's failed to do what it's obligated to do? I'm unaware of that, Your Honor. But, Your Honor, I would say this. In this particular circumstance, I would say that with the situation with the hurricane, and then in 2020 with COVID, right, in the spring of that year, the court system again shut down. And a series of emergency orders was issued. The Supreme Court ordered on March 18, 2020, that all previous schedule or proceedings, whether civil, criminal, or before any judicial officer in any judicial branch facility, shall be continued without date. And no new proceeding schedule, limiting exceptions by surprise, would be initiated. The court also said that judges had the discretion to hold a remote hearing via teleconferencing, Zoom, whatever, upon motion by a party. Mr. Morton, as counsel, they never motioned for any type of remote hearing. All right, where did the district court emphasize either the hurricane or COVID? Well, these things were not presented on the record. And at that point in time, Your Honor, the judge had not been served. In fact, the magistrate and the district court denied Mr. Morton's motion to serve a judge at that point. Well, that's a good answer for why there's no fault on the part of your office. Yes, Your Honor. But it seems to be a further indictment of the district court's opinion here, because if you've given us now in this court good reasons to explain the delay, then the district court should have cited those good reasons. And when there is inordinate delay, the burden shifts to government to have some explaining to do. And in government, your office was never given the opportunity to even do that, because the district judge just jumped ahead and said, no exhaustion. So why isn't the prudent thing for us to do to send it back down so that the normal process can occur here? The normal adversary process where the government, if you believe that Mr. Morton still needs to exhaust and didn't exhaust, then you get to make all these arguments to the district court that you never had a chance to make. You're making them to us now, but we're not the trial court. I understand, Your Honor. I don't have an argument as to why. But I assume you would make the argument that after the status conference, he sat on his hands and didn't do anything? He didn't follow? He didn't poke, prod, file mandamus? There's all kinds of things you could argue that you never got a chance to argue. Yes, Your Honor. That is also true. Would we take into account the fact that we are here three more years later and still nothing has happened? Well, Your Honor, Mr. Morton filed his habeas on April 3, 2020. And that would stop any action? I don't think it stops any action in the charge of the habeas court. It's not a vertical between the two. So he could have listened to the district court and filed the habeas. He could have followed habeas court rule two. But why aren't the Superior Court looking at the fact that he's filing federal habeas? Whoops. I guess we better boot this thing and deal with this case. I'm not as to whether or not the district court was aware of the student assistance. Well, even if it's not aware of the federal habeas, it's aware that it has a case sitting on its docket that is growing substantial quantities of loss. And this is why, and even to the district court's credit, it was concerned about at the time. And it said, filed a mandamus. The district court was aware that in the Virgin Islands this is something that would prompt the Supreme Court, put it on their radar screen and say, hey, look, this is the Superior Court. Is it your understanding that the Virgin Islands Supreme Court is pretty effective at using the mandamus remedy to get the Superior Court to move the case along? Yes, Your Honor. All right. So again, if we send it back, make that argument, right? You never get a chance to make that argument. Not with the district court, Your Honor. You've made that argument here as to mandamus being the proper remedy. I guess I'd like to understand in light of our own case law that says that we shouldn't require fishers to go to extraordinary lengths or they don't need to take extraordinary measures to exhaust. And mandamus, of course, is an extraordinary remedy. How could a requirement of mandamus ever come into play as opposed to just the normal appeal process? Well, Your Honor, mandamus is an extraordinary remedy. But mandamus is a less extreme remedy than what one proposes here, which is to ignore federalism, ignore comedy, ignore the well-sounding jurisprudence that holds that a state or a territorial court should get the first full round to consider the habeas petition before the federal court excuses the exhaustion requirement. But we've said comedy is a lesser concern when the state or territorial court has had the opportunity to address the issues. And here these issues were before Superior Court. It just didn't do anything for years. And even getting the status conference took a year after that request. But the Supreme Court has not had an opportunity to consider this case. And that was the purpose of the district court's basically dismissal for failure to file a mandamus. It was to, hey, put this on the Supreme Court's radar screen, give them an opportunity to see that this case is out there. My question to you is, is that something that we should be countenancing? Is that rationale really appropriate to say that what's required in the normal course for exhaustion is for a petitioner to go to a state Supreme Court and seek a mandamus petition? That if there's a delay of years and years in, say, the state Superior Court or the territorial Superior Court, that without having sought a mandamus, that a petitioner hasn't exhausted it? It may not be appropriate for the entire circuit, but it certainly is in this particular case, under the facts and circumstances of this particular case, in this particular territory, something that… Which is reasonable for him to do. Yeah. You're not asking for per se rule. No, Your Honor. That mandamus must be sought. No, Your Honor. Okay. But you would say in this territory, what makes this different? I would say maybe the age of our court system, just customs of the territory. And the district court knew this and went straight to that. And these Supreme Courts are about, what, 10 years old now? I think it's 13, 14 years. So part of this is growing pains? Yes, Your Honor. All right. I have two quick things. Most of the case law exhaustion that we have in our court is pre-ed vote. Is there any reason that that case law would not still be good law on this issue? I mean, you deal with these issues every day. Right. I mean, to the extent that, you know, Edgar places burdens on successive petitions and so forth, and statute of limitations, although that's been told in this particular case. But specifically exhaustion and exceptions. There's no new standards there. I'm not aware of one, Your Honor. I will, I can check and file supplements if you wish. Secondly, of the case that you did mention that was out of circuit in 1960, whatever. Yes, Your Honor. What was the name of that case again? Barsdale, B-A-R-S-D-A-L-E. Oh, OK. I misunderstood. OK. And so just to sum up, I would submit that this court should not excise the version of the Supreme Court from the consideration of this very, very serious pay-use corpus petition and exhaust remedies. Because that's what's going to happen here. If it does, any type of evidentiary hearing will be mandated back to the Superior Court. Any type of appeal up the chain from a decision there would go through this court, through the United States Supreme Court. And the version of the Supreme Court would be basically cut out of this entire process. And that's something that we want here, the version of the Supreme Court. Thank you very much, Mr. Clement. We'll hear the final from Mr. Layton. Your Honor, as my colleague suggested, it's a serious exception to forget comedy and have the federal court review Disher's case. But what is more serious is that when Disher is alleged, he's being incarcerated and held in violation of his constitutional rights. And the writ of habeas corpus is considered the most important of all writs. It's called the Great Writ. So I would suggest that the— The Great Writ is accessed after fully giving the state court system, including the highest court in the state system, the opportunity to rule on it first. Correct? Correct, Your Honor. And the territorial court has had that opportunity. Within the Supreme Court of the Virgin Islands has had that opportunity in this case. Of course not, because you can't go directly to the Supreme Court. You have to go through each level of court here. One trial court and then directly to the Supreme Court. But if the first level of court never rules on it, you can never get to the Supreme Court. Filing a petition for mandamus doesn't fairly present your claims to the court. It's a separate action that says, hey, I fairly presented my claims to trial court and they won't do anything about it. I can't get to you if they don't do anything. Make them do something. But within a year, approximately a year after the petition was filed, it was fully briefed, and the court had a motion for judgment on the pleadings. That would have ended the case if it ruled in the petitioner's favor. As soon as that happened, the ball was in the court's court. The court did nothing about it. And let's not forget that in the year between that and the petitioner filing the motion for a status hearing, the court could have ruled on it. The court could have issued a written set of briefings. It didn't. If the Supreme Court had ruled, what would be the next step? Had ruled on the motion for judgment on the pleadings? And denied relief. If the motion for judgment on the pleadings was denied, I expect that the court would have issued a written set of briefings scheduled. Denied behaviors relief. Oh, if that was denied outright with just on the merits, not for some procedural error. On the merits. Then I suppose he would have immediately appealed that to the Supreme Court, the Virgin Islands Supreme Court, and gone through the ordinary course. So is it – if you think about the writ of mandamus here in the Virgin Islands, more like an appeal than, say, a state court system where it's a decision, a delay at the level of a county police court or a district court where there's an interviewing appellate court. I think doing that is tantamount to finding that the process is ineffective if it were to be ruled on too. I think saying that in a particular jurisdiction, you are required to have a next-level court order the trial court to do its job is – No, that's not what Mr. Conant argued. I asked him that question about a per se rule, and he specifically said we're not seeking a per se rule. We're asking the court to look at the facts and circumstances of this case and conclude that it was not unreasonable in this case on these facts for this petitioner to have sought mandamus. Are you arguing for a per se rule in the other direction, that no court could ever say that on the facts and circumstances of the case, mandamus should have been sought? I don't have a proper hypothetical where that could be held. I think it probably could be, but I think more important to consider is I can't imagine a circumstance where there's been an inordinate delay and the government would say, well, you don't have to file mandamus. I think that if it was held that mandamus was required – Well, an easy case would be where somebody filed one mandamus petition and it never got acted on. I mean, how many do you have to file? There are many ways to show breakdown in the system. Well, never can be determined because that means you're waiting forever. Which is exactly a good point. Excellent, excellent point. You filed a mandamus petition. It sits for an inordinate period of time, to use a word. Do you have to keep filing? No. I don't think you have to go down that road. I think you should look at what's happening in the court that has jurisdiction over the matter. And that's exactly what happened here. He got the status hearing, got an order on the record that something was going to happen, and it never did. So how long do you wait? And, Your Honors, I believe that, based on the circumstances of the issue, it is well within this court's discretion to end petitioner's suffering and give him the review he deserves in federal court. In the alternative, I think there's no question that this court should reverse the remand for a hearing to allow the state to attempt to meet its burden, which is not an easy burden to meet, to excuse in order to delay. Thank you very much. Perfect. Thank you, Mr. Lader. Thank you, Mr. Clement. This argument was particularly illuminating. Thank you. The court will take the matter under its last name.